UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | Chapter 7 |
| ALTENDORF TRANSPORT, INC., | |
| Debtor | Case No. 14-30651 |
| ANDREW MURRAY,<br>TIM CHAPMAN, RUAN GOUWS,<br>HUGH BARRON, RAYMOND OWEN,<br>MORNE VIVIER, DORIN BUTNARIU,<br>and ANDRE MARNEWECK, individually<br>and on behalf of all similarly situated persons, | **COMPLAINT**<br><br>Adversary Proceeding No. |
| Plaintiffs | |
| -- against -- | |
| ALTENDORF TRANSPORT, INC., | |
| Defendant | |

**COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY AND
OBJECTING TO DEBTOR'S DISCHARGE PURSUANT
TO SECTIONS 523 AND 727 OF THE BANKRUPTCY CODE**

1. Plaintiff-Creditors ("Plaintiffs") ANDREW MURRAY, TIM CHAPMAN, RUAN GOUWS, HUGH BARRON, RAYMOND OWEN, MORNE VIVIER, DORIN BUTNARIU, and ANDRE MARNEWECK for its Complaint against Defendant-Debtor ALTENDORF TRANSPORT, INC. ("Defendant"), respectfully allege:

**JURISDICTION**

2. On December 17, 2014, the Defendant filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in United States Bankruptcy Court for the District of North Dakota.

3. A meeting of creditors was duly noticed by Debtor and initially scheduled to be held on

1

January 15, 2015.

4. The meeting of creditors was continued and ultimately held on January 28, 2015 pursuant to Section 341(a) of the Bankruptcy Code.

5. As of the date of this Complaint, the Debtor has not been granted a discharge.

6. This Complaint is timely because the date by which a Complaint objecting to the Defendant's discharge or to determine dischargeability of a debt expires on March 16, 2015.

7. This is an adversary proceeding in which Plaintiffs are objecting to Defendant's discharge under Bankruptcy Code §§ 727(a)(3) and 727(a)(4)(A) and are seeking a determination as to the dischargeability of the debt owed by the Defendant to Plaintiffs under Bankruptcy Code §§ 523(a)(2)(A) and 523(a)(6).

8. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code §§ 523 and 727.

9. This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## PARTIES

10. Plaintiffs are and were, at all times relevant herein, citizens and residents of foreign countries who have worked for Defendant in the United States under the auspices of H-2A visas. Specifically, Plaintiffs Murray, Gouws, Vivier, and Marneweck are citizens and residents of South Africa; Plaintiffs Chapman, Barron, and Owen are citizens and residents of New Zealand; and Plaintiff Butnariu is a citizen and resident of Romania.

11. Plaintiffs are creditors holding unsecured nonpriority claims.

12. Prior to the automatic stay caused by Defendant's bankruptcy petition, Plaintiffs were actively litigating a class action lawsuit in United States District Court for the District of

North Dakota, <u>Murray et al v. Altendorf Transport, Inc. et al</u>, 2:10-cv-0013, on behalf of themselves and a class of all other similarly situated persons ("the Class").

13. Defendant is the Debtor in the above-captioned case and is a North Dakota corporation with its principal place of business in Minto, North Dakota.

## GENERAL ALLEGATIONS

14. Defendant, through its owner and chief executive, Janice Altendorf, and its agents, routinely applies for and obtains employees from South Africa, New Zealand, Romania, and a number of other countries through the federal H-2A guestworker visa program established by 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

15. At all relevant times herein, Defendant employed Plaintiffs and similarly situated persons as commercial custom harvesters under H-2A guestworker visas.

16. Defendant came to employ Plaintiffs and similarly situated persons as H-2A guestworkers through its agents' filing of relevant documents required by the United States Department of Labor, including Employment and Training Administration Form 750 ("ETA-750") and Form 790 ("ETA-790"), all of which provide requirements for straight time and overtime compensation when necessary in addition to other certain conditions of employment as specified in the H-2A regulations.

17. Plaintiffs and similarly situated persons entered into employment contracts with Defendant Altendorf Harvesting, the "minimum . . . provisions" of which are established by the H-2A regulations. <u>See, e.g.</u>, 20 C.F.R. § 122(q) (2012); 20 C.F.R. § 122(14) (2008).

18. Defendant ultimately required Plaintiffs and similarly situated persons to work many hours a week beyond the number of hours stated in the ETA-750s and ETA-790s and at rates that violated their employment contracts, specifically the minimum contractual

3

provisions established by the H-2A regulations.

19. Throughout their employment with Defendant, Plaintiffs and all similarly situated persons performed activities, performed duties, and spent time that constitutes time worked, for which Defendant was obligated to compensate Plaintiffs and all similarly situated persons at their regular, premium, or overtime rate under the FLSA, North Dakota state law, and under the terms of their employment contracts and the H-2A regulations.

20. Defendant knew or should have known that Plaintiffs and all similarly situated persons were performing their required duties while working for wages below the amount agreed to in their employment contracts and H-2A visa requirements.

21. Defendant knew of, should have known of, or showed reckless disregard for their obligations to properly compensate Plaintiffs and all similarly situated persons under the FLSA, North Dakota state law, and under the terms of their employment contracts and H-2A visa requirements.

**PLAINTIFFS' FEDERAL DISTRICT COURT CLASS ACTION LAWSUIT
AGAINST DEFENDANT JANICE MARIE ALTENDORF
AND ALTENDORF HARVESTING, INC.**

22. On October 28, 2010, Plaintiffs Andrew and Peter Murray ("Murrays") initiated a civil action against Defendant and its owner and chief executive Janice Altendorf by filing a complaint in the United States District Court of North Dakota. See Murray et al v. Altendorf Transport, Inc. et al, 2:10-cv-0013, Doc #1.

23. Initially, the Murrays brought "their claims individually and as a collective action under the" Fair Labor Standards Act ("FLSA"). Id. at 6. The complaint also sought relief for violations of 18 U.S.C. § 1589, the Trafficking Victims Protection Act ("TVPA"); N.D.C.C. § 34-06-05, North Dakota state law requiring employers to pay the state's

4

minimum wage; and for breach of contract.

24. On March 31, 2011, Plaintiffs moved for conditional certification of the FLSA collective action claim and to facilitate notice to putative class members of their right to join the FLSA action by filing written consent with the Court. See id. at Doc. #21.

25. Due to the difficulties and language barriers associated with facilitating notice to foreign nationals located around the world, a motion to extend the period of time for potential plaintiffs to join the FLSA collective action was made by Plaintiffs on August 26, 2011. See id. at Doc. #27. After a hearing, the court granted Plaintiffs' motion to extend this deadline to November 22, 2011. See id. at Doc. #33.

26. Seven individuals provided written consent to join the FLSA collective action as required under 29 U.S.C. § 256: Andre Marneweck (consent filed on June 30, 2011); Tim Chapman (August 25, 2011); Raymond Jack Owen (August 29, 2011); Morne Vivier (September 20, 2011); Dorin Butnariu (October 4, 2011); R. Hugh Barron (November 14, 2011); and Ruan Gouws (November 17, 2011).

27. Because of the low number of FLSA "opt-ins," the Murrays, who were at the time the only two named Plaintiffs, moved the court on March 18, 2013 for leave to file an amended complaint to join the seven "opt-in" plaintiffs as parties and abandon the FLSA collective action. See id. at Doc. #74. The court granted the Murrays' motion on April 8, 2013. See id. at Doc. #77. The Murrays filed an amended complaint on February 17, 2013. See id. at Doc. #78.

28. Plaintiffs filed a motion to compel discovery on June 26, 2013 seeking documents related to the issue of certification of their breach of contract claim as a class action under Rule 23 of the Federal Rules of Civil Procedure. See id. at Doc. #85.

5

29. Because the July 3, 2013 deadline for Plaintiffs to file a class certification motion under Rule 23 of the Federal Rules of Civil Procedure was looming at the time of the above-described discovery dispute, the court permitted supplemental briefing in support or opposition to Plaintiffs' motion for class certification after the court's issuance of an order on Plaintiffs' motion to compel discovery. See id. at Doc. #92.

30. Plaintiffs filed their motion for class action certification of their breach of contract claim on July 3, 2013. See id. at Doc. #94. On August 15, 2013, Defendants filed their reply to the same. See id. at Doc. #115.

31. On August 30, 2013, the court granted Plaintiffs' motion to compel discovery. See id. at Doc. #120. Plaintiffs filed a motion for attorney fees (see id. at Doc. #121), which was granted by the court. See id. at Doc. #132.

32. In or about early September of 2013, Peter Murray, an original plaintiff, was killed in a car accident in his native South Africa.

33. Defendants failed to comply with the court's August 30, 2013 order on motion to compel. See id. at Doc. #129.

34. Plaintiffs thereafter filed a motion for sanctions under Rule 37(b)(2) of the Federal rules of Civil Procedure on November 5, 2013. See id. at Doc. #133.

35. The court held a hearing on the dual issues of Plaintiffs' motion for sanctions and motion for class certification on January 16, 2014. See id. at Doc. #165.

36. On March 12, 2014, the court granted Plaintiffs' motion for sanctions, finding that "[t]he Altendorfs' blatant disregard of the Court's Order and systematic abuse of the discovery process amount[ed] to a willful violation of the Court's Order on Motion to Compel[.]" See id. at Doc. #166, p. 7. As a sanction, the court made an adverse factual finding against

6

Defendant and Janice Altendorf in that case, decreeing "[t]hat for any and all class members who were employed by Defendants from October 24, 2004 through December 31, 2007, Defendants' general employment policies, as established by common evidence, result in classwide breach of the uniform contracts at issue in this case and resulting expectation damages[.]" Id. at p. 11.

37. On March 28, 2014, the court granted Plaintiffs' motion for class action certification of the breach of contract claim, only denying Plaintiffs' request that the class action proceed in the form of three separate classes. See id. at Doc. #168.

38. The parties stipulated to a notice plan with regard to the class on April 28, 2014. See id. at Doc. #194. The stipulated notice plan was adopted by the court on June 10, 2014. See id. at Doc. #202.

39. On June 12, 2014, Defendant sent, through counsel, a letter to Plaintiffs regarding certain discovery requests relating to the issue of piercing the corporate veil between Defendant Altendorf Transport, Inc. and Defendant Janice Altendorf and whether Altendorf Transport, Inc., Valesco Diversified, Inc., Altendorf Trucking, Inc. / Express, and Elmer Altendorf & Sons or any combination thereof are alter egos. See id. at Doc. #217. Pertinently, Defendant's counsel offered to provide "a limited amount of information for purposes of satisfying [Plaintiffs] that Altendorf Transport, Inc. / Altendorf Harvesting and Janice Altendorf are not corporate shells, are not insolvent companies, and are not simply pass through corporations with no substantial assets." See id. at Doc. #217, Ex. C p. 28.

40. Plaintiffs filed a second motion to compel on July 21, 2014, which related to Plaintiffs' request for information relating to the above-mentioned issue of piercing the corporate veil and alter ego. See id. at Doc. #217.

7

41. On November 5, 2014, the court denied Plaintiffs' second motion to compel on the narrow ground that their discovery requests were not "encompassed by an existing claim or defense." See id. at Doc. #253, p. 4.

42. On November 17, 2014, Plaintiffs' filed a motion for leave to file a second amended complaint, which attached a proposed second amended complaint and supporting documentation filed in the form of a proposed exhibit to the proposed second amended complaint. See id. at Doc. #254. The proposed second amended complaint and the above-mentioned supporting documentation are concurrently filed with this Complaint and are hereby incorporated by reference. See Exhibits 1 and 2 (attached).

43. Plaintiffs' proposed second amended complaint sought to plead, with particularity where required, violations of RICO, 18 U.S.C. §§ 1961-68 and also specifically alleged that Defendant Janice Altendorf committed predicate acts of 1) forced labor in violation of 18 U.S.C. § 1589; 2) immigration document fraud in violation of 18 U.S.C. § 1546; 3) mail fraud in violation of 18 U.S.C. § 1341; and 4) wire fraud in violation of 18 U.S.C. § 1343. See Ex. 1 at 19-32.

44. The proposed second amended complaint also sought to plead alter ego liability with regard to the individuals and entities named in paragraph 39 above. Id. at 32-36.

45. Exactly two weeks after briefing on Plaintiffs' motion for leave to file their second amended complaint had concluded, Defendant and Janice Altendorf filed their notices of bankruptcy. See Doc. #1.

46. An order staying the case due to the pending bankruptcy filings was entered on January 9, 2015, precluding the court from ruling on Plaintiffs' motion for leave to file a second amended complaint. See Murray et al v. Altendorf Transport, Inc. et al, 2:10-cv-0013 at

Doc #268.

### COUNT I: NON-DISCHARGEABILITY OF PLAINTIFFS' DEBT UNDER SECTION 532(a)(2)(A) OF THE BANKRUPTCY CODE

47. Plaintiffs repeat and re-alleges the allegations set forth in paragraphs 1 through 46 of this Complaint as if set forth fully herein.

48. Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
>
> (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

49. All or part of the debt owed to Plaintiffs and the Class, as supported by the documents filed in <u>Murray et al v. Altendorf Transport, Inc. et al</u> and those attached hereto, are non-dischargeable as the debt is for services obtained by false pretenses, false representation, or actual fraud within the meaning of Bankruptcy Code § § 523(a)(2)(A).

### COUNT II: NON-DISCHARGEABILITY OF PLAINTIFFS' DEBT UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE

50. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 49 of this Complaint as if set forth fully herein.

51. Bankruptcy Code § 523(a)(6) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of

9

another entity.

52. All or part of the debt owed to Plaintiffs and the Class, as supported by the documents filed in <u>Murray et al v. Altendorf Transport, Inc. et al</u> and those attached hereto, are non-dischargeable as the debt is for willful and malicious injury within the meaning of Bankruptcy Code § 523(a)(6).

**COUNT III: OBJECTION TO DEBTOR'S DISCHARGE UNDER SECTION 727(a)(3) OF THE BANKRUPTCY CODE**

53. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 53 of this Complaint as if set forth fully herein.

54. Bankruptcy Code § 727(a)(3) provides that:

   (a) The court shall grant the debtor a discharge, unless . . .

   (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

55. Janice Altendorf, in her operation of her various businesses, including Defendant and Valesco Diversified, Inc., operated these businesses as her alter egos, seeking to shield herself from personal liability while at the same time using funds of these businesses for unjust and unfair purposes.

56. Defendant, through its operation by Janice Altendorf, concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers, from which the Defendant's financial condition or business transactions might be ascertained. Prominently, but without limitation, Defendant has not

10

filed and / or failed to produce tax returns during the 2012 and 2013 tax years, which are critically important to an ascertainment of Defendant's financial condition and business transactions.

57. By virtue of the foregoing, the Defendant's discharge should be denied under Bankruptcy Code § 727(a)(3).

58. WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment determining that the claims and debts of Plaintiffs and the Class against Defendant are non-dischargeable under Bankruptcy Code § § 523(a)(2)(A), and 523(a)(6) or, in the alternative, denying the Defendant's discharge under Bankruptcy Code § § 727(a)(3), and granting Plaintiffs such other and further relief as this Court may deem just and proper.

Respectfully submitted this 16th day of March, 2015.

By:/s/ Mac Schneider_____
Mac Schneider
ND ID # 06476
Schneider, Schneider, & Schneider
815 Third Avenue South
Fargo, ND 58103
701-235-4481